Case number 22-1275 from Minnesota United States v. Abdisalan Hussein Case number 22-1275 from Minnesota United States v. Abdisalan Hussein Good morning Your Honors, R.J. Zaid on behalf of Abdisalan Hussein. This is the second time that I've appeared before this court basically on the same issue. The interpretation of Minnesota's Runner Statute. And specifically, we believe that the District Court erred in the interpretation of the Runner Statute. And as a result of that, the government cannot prove any actual laws. So therefore, the restitution amount should be zero, Your Honor. And here's why. The Supreme Court has stated that you can't search for interpretation with the plain language of the statute. And the plain language of the statute trumps any policy arguments that call for a different conclusion. What the District Court here did, it instituted its view of policy in interpreting the Runner Statute to exclude Mr. Hussein from the safe harbor provisions that are given in the Harbor Act. This court remanded the case to the District Court last time on the restitution issue because it said, Not all recruiters are runners under Minnesota's restrictive statute. And so the case here really turns, Your Honor, on statutory interpretation. And specifically, the Runner Statute 609.612 states that the term runner does not include a person who solicits or procures clients either through public media, and I'll get into public media in a little bit, or consistent, consistent with the requirements of 65B.54 subdivision B. Now, the District Court did not agree with the word consistent with. Basically, you know, he said, the District Court says, well, consistent with does not mean that if you comply with the unethical practices of safe harbors, that you're protected. He said, no, that can't be the case. So therefore, he crafted an exception. The statute talks about being consistent with the requirements of 65B.54 subdivision 6. It did not say consistent just with 65B.54 subdivision 6B. The District Court in this case took the Runner Statute and said, hey, it only applies to 6B. The Court crafted a narrower interpretation of the Runner Statute that only applies to 6B. He ignored 6A and he ignored 6C, saying it can't be on policy grounds. The statute did not say in accordance with, as required there. It said consistent. Consistent, the word consistent, if you look at the funny meaning of consistent, is marked by harmony, regularity, steady continuity, free from variation or contradiction, compatible. It doesn't require that, okay, basically the statute said, if you're a person, you are not a runner if you do all the things right. We go to the place where they say do all the things right. The first one is, hey, chiropractor, you cannot directly solicit anyone who's been injured in an accident. You can't do it individually and you can't do that to any third-party aid. Simply you cannot do that. Then it says, however, if they reach out to you, that's okay. What the District Court said here, well, it's okay for them to reach out to the chiropractor and that's okay, but it's not okay for them to reach out to someone that everybody knows is working for the chiropractor. That interpretation does not make sense. The court said, no, this Part A only applies to chiropractors, but not anybody working for them. But doesn't it, it refers to, in that provision, it refers to, quote, a licensee. And earlier in the statute, the licensee, I think, is a reference back to a licensed healthcare provider. So under the plain language, I mean, it doesn't seem to me that it would apply to a runner. Here's the issue on that one. The runner statute says consistent with. Consistent with. It does not say as here. What I'm arguing here is that consistent with means if it's okay for an injured person to reach out to a chiropractor, then it should be okay for that injured person to reach out for someone who's working for that chiropractor. It doesn't make sense otherwise, but I agree with you. I mean, it just mentions licensee on that point. But then if you take that interpretation, you're rendering the exception in the runner statute superfluous. Now, Judge Davis said, no, it doesn't render it superfluous because Section B of the safe harbor provision allows them to mail stuff. But the runner statute itself allows people to mail stuff. If you look at the interpretation of public media under the runner statute, that deals with the mailing part. So basically, by the court finding that it only applies to licensee, you've thrown out the runner statute completely. That cannot be the case. That cannot be the law. The court ignores subsection C-3. Subsection C-3, the court, there's no word licensee in C-3. And the court says, yeah, it should apply to licensee. But then the court says, okay, I'll set that aside. And, you know, you have not shown that there's a social setting that is stranded or relative. That's wrong. The two people who testified at trial, both were friends of Hussein. And Hussein was one of the people who was treated at that point. The other incidents happened at social settings. The government has not proven that Hussein ever, ever reached out to somebody and said, hey, do you need a chiropractor? Let's take it there. The evidence has only shown repeatedly with all 65 patients that they reached out to him because the evidence shows that. He arrived in the United States in 1994. He was an elder in the community. He was one of the original Somalis in Minnesota. His job was to help others. Hey, Abdi, where's the doctor? Hey, Abdi, where can I get insurance? Hey, Abdi, where can I get a car? Hey, Abdi, we're right there. So he is known as helping people. So in this case, people say, hey, Abdi, we know you work for a chiropractor. Which one should I use? He says, well, use that one. And that alone is the government's theory of the case. That alone says you were wrong because the safe harbor only protects the chiropractor. It does not protect the runner. What evidence was there in the record? I think the friends and relatives one is the more interesting of the two, at least in this case. What evidence is there that these people were his friends? Because, I mean, the government makes it out this was purely a profit motive. Yes, they were in the Somali community, but they didn't really know each other. Right. Well, at trial, there were two. There was a car accident involving Mr. Ustain and two of his friends. Those are three of the claims that were there. Another claim was his daughter and her child. So that's the people who testified at trial. Then the others were people who reached out. The main witness against Mr. Ustain was a woman who said, I was in a car accident. I talked to my elders. I said, who called? They said, hey, call Abdi. Call Abdi. She goes, hey, Abdi, where can I go? And he introduces her to somebody there. Again, I would say that is a social sentiment. He is not reaching out to them. Suppose we don't buy the argument, though, on the reaching out that applies only to the licensed health care providers. Would we need, under your view, would we then remand for further findings on whether some of these people were relatives or friends? Or do we take the district judges? The district judges seem to say these were not relatives or friends. And so hasn't the district court already made that determination, or would we need a remand? No, there's no need for remand, Your Honor. The issue before is purely statutory construction. The real issue here, Your Honor, is subdivision A. Why is it that a chiropractor is free to operate ethically when people are reaching out to him? And why is it that somebody working for him, that everybody knows is working for him, is liable under those circumstances? And the reason, and then your point is spot on, Judge. It's the licensing aspect. But I submit to the court that consistent with Abdi reads this statute, as long as I act consistent with this, I'm okay. And so when somebody reaches out to my employer, the licensee chiropractor, I'm okay. That's the issue, Your Honor. And I reserve the rest of my time for rebuttal unless the court has any questions. Thank you, Your Honor. Thank you, Your Honor. Thank you. Good morning, and may it please the court. Counsel, my name is Kate Zickey. I represent the United States in this matter. Your Honor, comp rehab was a chiropractic practice that was founded on fraud, and where 90% of the business came from a fraudulent scheme to defraud insurance companies. The defendant in this case represented a small part of the over 500 patients who came to comp rehab through fraudulent practices. In this case, we can zoom in on the conduct of this defendant, Mr. Hussain, and determine that he was a runner under the statutory definition of Minnesota law, no exception applies, and that his conduct for comp rehab, the entire purpose of those acts, was solely to bring in patients. The parties agreed that the universe of patients Mr. Hussain is responsible for is roughly 60 to 65 patients. Some of those were carved out because of the change in the law that affected only chiropractor Angela Schultz. However, what we know today, based on the district court's findings, is that Mr. Hussain acted as a runner and solely as a runner. Let's start with the beginning. It's undisputed that he had an accident and came to get chiropractic services from that accident. Then Dr. Hummany testified, this was the first patient that we made that transition from patient to runner. In fact, the doctors had a meeting with Mr. Hussain where they determined a price per patient and that he would act as a runner. Mr. Hussain was different from other runners associated with comp rehab in that he had no other job. He didn't clean at the clinics, he didn't work at the front desk, he didn't drive patients. This was his only job, and he was good at it. He found people, brought them in, and had them act as patients. Comp rehab had a very restrictive template for what they wanted in a patient. They wanted the right kind of accident, the right kind of insurance, the right kind of injuries, because they knew that that would generate the most money for their business. And that's what Mr. Hussain did. In this case, under Minnesota's definition of a runner, Mr. Hussain qualifies without question, and he's therefore responsible for the patients he brought in to comp rehab and, consistent with the district court's findings, some of the patients he brought in to Angela Schultz's clinic. What does the record show about the number of friends and family that were referred here? Your Honor, the government does not have a spreadsheet which lists friends and family. However, in this case, we know that there was a meeting to determine that he would become a runner, and like most people starting out in an entrepreneurial activity, he began with people that he knew, the other people that were involved in his accident that he himself had been a part of. He also reached out to other people he knew in Minnesota's Somali-American community. However, it cannot be that Mr. Hussain procured dozens of people that were all friends and family, all of whom had been unfortunate enough to be involved in a car accident. That seems right, but some of them might be friends and family, pursuant to that exception, which, if that's the case, would call into question the total restitution amount. Is that correct? Your Honor, I respectfully disagree. The district court has a charge to find restitution that is reasonable, and the standard for restitution is obviously very different from the standard of guilt at the trial portion of the proceedings. So in this case, the district court did exactly what it was supposed to do. It determined a reasonable amount of restitution based on what it knew from its observations at the trial and all the other proceedings before it about what Mr. Hussain did. The fact that somebody might have reached out for a business reason to someone who is a friend or a family member does not call that into question. The friends and family section of Minnesota's statute really allows a chiropractor to operate his or her business. But it doesn't include licensee, does it? I'm sorry, Your Honor? It doesn't include the term licensee in that provision, does it? That's correct, Your Honor. However, the statute is clear that if somebody who is working for a chiropractor, say a receptionist at a legitimate chiropractor clinic, is approached by a family member and said, I had a car accident, can you give me the phone number for the clinic where you work? If that provision didn't exist, then the receptionist would be in the odd position of saying, no, I can't do that. I can't do those things because that would violate Minnesota's law. And that's certainly not what the Minnesota legislature was attempting to do when it carved out reasonable exceptions to allow individuals who work in this particular practice area to practice just as a dentist might, just as an ophthalmologist might. That seems like a policy call, not a statutory language call. I tend to agree with Judge Kobus that the licensee language is not in there. And let's just take, maybe it's factually untrue, I don't know, but let's take the daughter gets in a car accident. That seems to be clearly falling under the friends and family exception. I mean, just by its plain language. And I don't think it's enough to say, well, you only have to reasonably estimate if, in fact, it's clearly erroneous, if the district court's finding is clearly erroneous. And I don't understand how telling your daughter, for example, to go to the chiropractic clinic could possibly be included in the definition of broader under that exception. Your Honor, in this case, we return to the facts. Mr. Hussain was procuring patients because his job was to act as a runner. That is how he made his agreement with the comp rehab doctors, and that was his only role. It's distinct from, say, a receptionist who has a legitimate job in a legitimate business for two reasons. First, he made an agreement to violate Minnesota law as a runner. He determined that that was what he was going to do for this clinic. And then secondly, because this clinic was operating 90 percent on the basis of fraud, it would be almost impossible to find patients who came in legitimately. And certainly with Mr. Hussain, we know that that number of patients is vanishingly small. Now I think you're actually going at the first Luna opinion, which is the Luna opinion recognizes that recruiters and runners can be different. And you may be right that for most of that, he was a runner. But I think Luna itself recognizes that he himself could be a recruiter for some patients. And I think the problem here is that unless you have another explanation for, say, the daughter, I think we would have to remand it so that the district court could figure out whether the exception applies, because as Luna says, not all recruiting is running. That's correct, Your Honor. And we are in the process, obviously, here today of talking about runners versus other people existing in the chiropractic ecosystem. However, the Luna opinion doesn't say that somebody who signs up to be a runner and makes that precise agreement with the doctors in a situation where that is forbidden by Minnesota law should get exceptions because he happened to know somebody that he did the running activities for. Well, let me ask you this. So say it's the wife, you know, and they're at dinner together. Wife just gets in a car accident. Wife says, where should I go for my chiropractic services? My back really, really hurts. And he says, well, I actually know this chiropractor who is giving me some visits. Why don't you go to him? He's really good. It seems to me like your argument would mean that he's a runner for purposes of that conversation over dinner, even though she may have reached out to him in the sense of asking him about it. And, you know, you look to a spouse for support. Am I wrong about that? I mean, yours seems to be that once a runner, always a runner. Your Honor, here again we look at the facts of this individual's conduct. He was paid to bring in patients. So under your set of facts, the question that would be very important to know is if he procures her as a patient, does he get that $1,000 to $1,500? If so, he's acting as a runner. It's distinct, again, from the receptionist who says, oh, yes, the doctor I work for is wonderful. Here's the phone number.  Give us a call. Because in that case, the receptionist isn't getting money to ensure that the person comes to the clinic and participates in this clinic business that, again, is focused on fraud. There's a distinct set of facts here where money changes hands, a price is agreed on, and then the runner acts under that rubric. And is it undisputed that there were payments made to the defendant for the family referrals? Yes, Your Honor. The patients that we are considering in this universe of restitution patients are all cases in which the ledger and other supporting documents show the payments occurred. So the argument then from the government is if money changes hands between the chiropractic clinic and the runner, the exceptions don't apply. And I guess my question is where does it say that in the exceptions? It certainly says that for the licensee, I think, because it limits it for the licensee, although that's up for dispute. But the friends and family exception, I'm looking for a textual hook for your argument. Your Honor, we go back to the definition of runner. And a runner is somebody who's operating for pecuniary gain and procuring patients or prospective patients for the licensee or the other medical provider. And that's exactly what Mr. Hussain was doing. So in that case, he is acting under that framework because that is what he was hired to do. There may be other situations, other runners, where there's more gray area. This is simply not that case. So you're saying the exception does not apply based on the facts of the case? Yes, Your Honor. This is a case where we have a smaller universe of patients. Luna, obviously, was dealing with a very large number of patients at a large time span, multiple clinics. We have Mr. Hussain here. We're drilling down, we're zooming in on several dozen patients who were brought in after Mr. Hussain had a meeting and signed up to become a runner. I think you should be right. I think that's what the statute does say. I'm just not sure the statute says that. Because why set up the definition of a runner? Create exceptions. I understand you think it's more limited. But I just can't find the textual hook in the exception itself for what you're saying. I understand, Your Honor. And obviously, we're making our arguments here today from our interpretation of the statute and what the statute's purposes are and how it operates in Minnesota's chiropractic industry. The legislature understands that Minnesota has this no-fault framework for its insurance for automobile accidents. They wanted to eliminate exactly the type of activity that Mr. Hussain was doing. People who sign up to become runners are signing up to commit felonies on behalf of chiropractors who are unscrupulous, unethical, and operating outside of the law. So simply because they happen to know some of the people that they are recruiting doesn't create that illegal entrepreneurial activity into a law force. So what if my uncle, who is a wealthy business guy, comes to me and says, Boy, I really hurt my back. Or I go to his place and I notice that he's having a hard time going around, and I say, Hey, I know a guy who can fix this. So I refer over there, and treatment's successful, and the chiropractor says, Boy, thanks a lot, man. That was appreciated. I'm going to take you out for dinner or something like that. I'll take you out golfing or something like that. Would I technically be in violation of the statute there? No. Why not? Your Honor, because if you look at the text of the statute, it's someone who for pecuniary gain, so with that aim in mind, then solicits or compures a prospective patient. What I'm finding is just it's hard when it gets into the friends and family to draw that line. So I'm kind of where Judge Strauss is, I think. Where in the statute is that line drawn? Yes, Your Honor. And I think here what we do is we take the definition of the runner, someone who's operating for pecuniary gain. They have a profit motive in mind. And that's exactly what applies to the facts here. Mr. Hussain was a patient. He became the first patient to runner transformation in comp rehab's history. That's what Dr. Howmany testified to. And he then set about recruiting other people as a runner with the idea that he would get money for doing that. That's exactly what he did under these facts. So it's distinct from the example you gave where a chiropractor is appreciative of your efforts to refer someone and takes you out for a nice meal or some other kind of thank you because it's a prospective. Because it goes to my intent in that case. Exactly. It's a prospective profit motive as opposed to someone being appreciative and offering a generous thank you. And this first referral occurred after the meeting where this runner relationship was established. Is that in the record? Yes, Your Honor. So Dr. Howmany testifies that after he becomes a patient, they have a meeting with him, they agree on the price, and then he sets about recruiting individuals from that point. And every patient who is contained in the government's offer of proof, whether stranger or family member, there was payment made to the appellant for the referral. That's what you're telling us? Yes, Your Honor. The government, prior to the restitution proceedings beginning in this case, there was a set of patients based on ledgers, investigative interviews, and information from the cooperating doctor, Dr. Howmany, that set forth kind of the universe of individual patients for whom Mr. Hussain was responsible. I see my time is almost up unless the court has any other questions. We ask this court to affirm the restitution order of the district court. All right. Thank you. Thank you, Your Honor. First of all, the record does not say that he was just a loaner. It is clear from the record that he provided interpreter services. He was asked by the chiropractor to come pick up the people and bring them. Most of them did not speak English. Was he paid a salary or anything along those lines? No, he was paid per patient per trip that was rendered. So all the money was not for referral. To your point, Judge Strauss, there's no tax show hook for what you're asking for. Specifically, runner is defined as somebody for procuring a rate. But I read that the term runner, capper, steer does not include a person who solicits or procures clients either through public media or consistent with the requirements of Section 65B.5 or subdivision 6. That is absolutely clear. And when you look at C, at the point C, it says this subdivision of unethical practice does not apply to contact with friends or relatives or statements made in a social setting. But the problem I'm having with your side of the argument is I think you overstate the friends and relatives exception, which is it's not enough, I don't think, to be an elder in the community, to be well-known in the community and say these are my friends. That doesn't work. You need to actually have a pre-existing relationship with those people. And when I asked you should we remand for a determination on that, you said no. And so I'm wondering now whether this works at all. Well, you go to solicit social setting. I submit that as an elder in the community who is a resource for people who do not speak English about how to make their way through America, when they reach out to them to ask them a question, that's a social setting. I think a social setting, the plain meaning of social setting is we're at a party, and somebody comes up to you and says, hey, I hear that you may know a chiropractor. I got a bad back. Can you tell me who you would recommend? Well, I would say, Your Honor, I would cite the Grunderson case where the text, structure, and history fail to establish that the government's position is unambiguously correct. The court must apply the rule of lenity and resolve the ambiguity in the defendant's favor. At a minimum, there's ambiguity here. The government is not unambiguously correct here. As such, the rule of lenity applies, and the court should find that the restitution is zero. That's my argument. If the court disagrees with that, I think it needs to be remanded because the people who testified at trial were clearly friends and relatives. Thank you, Your Honor. All right, counsel, thank you for your arguments. The case has been well argued. We appreciate your presentations this morning. The case is submitted, and the court will render a decision as soon as possible. You may stand aside. This is Colorado State.